[Cite as *MacDonald v. MacDonald*, 2011-Ohio-5389.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96099**

## AMY MACDONALD

PLAINTIFF-APPELLEE

vs.

## JOHN K. MACDONALD, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-319286

**BEFORE:** S. Gallagher, J., Stewart, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** October 20, 2011

**ATTORNEYS FOR APPELLANT**

Joseph G. Stafford
Gregory J. Moore
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, OH   44114

**ATTORNEYS FOR APPELLEE**

Margaret E. Stanard
Cheryl Wiltshire
Stanard & Corsi Co., L.P.A.
1370 Ontario Street
748 Standard Building
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶ 1}   Appellant John MacDonald, Jr., appeals the final decision of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, entered on November 10, 2010.   For the following reasons, we affirm.

{¶ 2}   Amy MacDonald ("Amy") and John MacDonald, Jr. ("John"), were married on October 26, 1992, and had two children together.   Amy filed a divorce action on December 27, 2007.   The minor children, born on June 4, 1997, and August 12, 2001, were represented by a guardian ad litem, Adam Thurman ("GAL").

{¶ 3}   The divorce was contentious.   The parties separated on March 31, 2008, when John was 44 years old and Amy was 45.   John graduated from Bowling Green University in 1989 and was last employed outside the home in 1994.   He consulted on

various projects from 1995 through 1998. In 2007, John owned and operated Globalink, Inc., which provided independent contracting services for Medical Mutual. The Medical Mutual contract lasted through 2009. Globalink maintained one account at Charter One Bank, into which all the proceeds from John's contracting work for Medical Mutual were deposited. The deposits totaled $40,083 and $7,800 for 2008 and 2007, respectively. John testified that the sole source of deposits into the Charter One account was income from Globalink. In 2009, 2008, and 2007, John personally claimed gross income of $37,310, $31,856, and $2,214, respectively. At trial, John testified that he was then currently beginning to "sell energy" and expected to earn around $50,000 to $70,000 yearly. John filed for Chapter 7 bankruptcy in 2005 and discharged $124,287 in credit card debt and two mortgages.

{¶ 4} Amy was employed, since 2006, as a sales manager for a paper company. Amy has an associate's degree and earns about $9,432.25 per month, including the monthly car allowance of $580. In 2010, 2009, and 2008, she received bonuses of $13,676, $9,924, and $34,883, respectively, received in violation of the trial court's temporary restraining order ("TRO"). Amy used the bonuses, at least in part, to take the children on vacations, which happened every year.

{¶ 5} Immediately before Amy filed for divorce, she liquidated her retirement account. After taxes and penalties, she received $58,593 and used $55,000 to pay off marital debt. She is paying the taxes and any associated penalties through her bankruptcy case, filed during the pendency of the divorce.

**{¶ 6}** Amy was the wage earner for the family, and John stayed home to raise the two minor children. The parties disagree as to whether this arrangement was planned or happened because of John's inability or lack of desire to find employment. The marital home was in foreclosure during the trial. Amy paid all the marital expenses during the marriage. During the divorce, she filed a motion to force John to vacate the marital residence. John opposed and refused to leave or pay anything toward the mortgage obligation. Amy vacated the marital home in August 2008 and ceased paying the mortgage. She rented another place near the marital home and within the same school district for the children. John lived in the marital home through the date of the trial. In September 2008, Amy notified John that she would no longer make the mortgage payments on the marital home. John took no action with respect to the mortgage, despite earning some income. In March 2009, he filed a motion for temporary spousal support.

**{¶ 7}** Amy filed two petitions for a domestic violence civil protection order against John for an altercation occurring on March 31, 2008. The first petition was dismissed, as noted in the magistrate's decision adopted by the trial court, because John's objection to the full hearing that occurred two days after the statutory deadline had technical merit. The second petition was identical to the original, essentially a "refiling" based on John's objection to the original filing. At the full hearing, the court found that Amy had not met her burden to show by a preponderance of the evidence that John committed acts of domestic violence as defined by R.C. 3113.31. There was no

evidence that Amy was injured in the altercation. The court found that John's acts of preventing her from calling the police and grabbing and chasing her, while physical, did not amount to threats of force against Amy. Amy never alleged that the children were in danger.

{¶ 8} The trial court entered the final judgment entry of divorce on November 10, 2010. The trial court made the following findings of fact and conclusions of law pertinent to John's assigned errors: (1) the parties lived beyond their economic means during their marriage; (2) both parties are guilty of financial misconduct; (3) Amy is to pay $300 per month in spousal support for five years for her improper handling of her bonuses in violation of the trial court's TRO;[1] (4) Amy is to pay $700 per month for five years for spousal support based on the income inequality; (5) all personal property and remaining marital assets are to be divided equally; (6) the parties are individually responsible for their own personal debt created during the pendency of the divorce proceedings; (7) the parties are to have equal parenting time with the children, although Amy is designated as the residential parent for school purposes; and (8) Amy is to pay child support in the amount of $510.21 per month if health insurance is provided. John timely appealed, raising six assignments of error. We will address each in turn.

---

[1] We note that although the trial court's final order awarded John $300 per month for a period of five years, the trial court also stated in its final entry that John is "entitled to half the net amount [of the bonuses] or $17,906.50. This amount shall be paid at the rate of $300.00 *per year* for five (5) years, as and for spousal support." (Emphasis added.) This statement appears to be nothing more than a typographical error when considering the court's final award of $300 per month for five years and the fact that $300 per month for five years totals $18,000, or approximately the amount John was entitled to receive.

{¶ 9} We review a trial court's determination in domestic relations cases under an abuse of discretion standard. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. The trial court must have discretion to equitably separate the married parties based on the facts of circumstances of each case. Id. Thus, "the term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶ 10} John's first assignment of error provides as follows: "The trial court erred and/or abused its discretion by adopting [Amy's] amended shared parenting plan, by ordering equal parenting time, and by designating [Amy] as the residential parent for school purposes." John argues that the court erred by deviating from the GAL's proposed shared parenting plan and additionally erred by not adopting John's proposed plan. His first assignment of error is without merit.

{¶ 11} "The allocation of parental rights and responsibilities are set forth in R.C. 3109.04, and the statute expresses a strong presumption that shared parenting is in the best interest of the child. The presumption in favor of shared parenting can be overcome, however, by evidence showing that shared parenting would not be in the child's best interest." *Kong v. Kong*, Cuyahoga App. No. 93120, 2010-Ohio-3180, ¶ 6. If each parent files a separate plan for shared parenting, the trial court must review the plans to determine whether either is in the best interest of the children. R.C.

3109.04(D)(1)(a)(ii).   If neither plan is acceptable, the court may order each parent to submit revised plans.   Id.

{¶ 12} R.C. 3109.04(F)(1) and (2) set "forth a number of nonexclusive factors to guide the court's discretion when deciding whether [the children's] best interests favor the adoption of a shared parenting plan."   *Kong*, 2010-Ohio-3180, ¶ 7.   Among the enumerated factors are the ability of the parents to cooperate and make joint decisions with respect to the children; the ability of each parent to encourage the sharing of love, affection, and contact between the children and the other parent; the geographic proximity of the parents to each other, as related to the practical considerations of shared parenting; and the recommendation of the GAL.

{¶ 13} In the current case, the trial court found that neither parent's shared parenting plan was in the best interest of the children, in part based on the GAL's recommendation that neither party should be the residential parent because that party would exclude the other from the children's lives; continuing the parenting-time arrangement in place during the divorce proceeding would give consistency to the children and minimize the interaction of the parents, in consideration of their acrimonious relationship; and since Amy's salary cannot support two overspending households, John would have to seek "gainful employment," thereby limiting his ability to care for the children full-time.   The court also found that the GAL's plan promoted too much interaction between the parents and additionally disrupted the children's homework time.

{¶ 14} The trial court ordered the parties to submit revised plans pursuant to R.C. 3109.04(D)(1)(a)(ii). Amy ultimately submitted a plan in compliance with the trial court's request that gave each parent 50 percent of the parenting time and made her the residential parent solely for purposes of the children's schooling. John was living in the marital residence that was the subject of a foreclosure proceeding. John filed amended shared parenting plans that were largely similar to the original plan the court rejected; more specifically, the plans gave John custody of the children 70 percent of the time.

{¶ 15} John argues that he should have the children a majority of the time because he was the primary caregiver for the children during the marriage, that Amy continuously interfered with his and the children's relationship; and that the trial court failed to articulate reasons in support of deviating from the GAL's recommendation.

{¶ 16} Contrary to John's specific arguments, the trial court indeed articulated a reason for deviating from the GAL's proposed shared parenting plan and in part based its final decision on the GAL's recommendation. We note that the GAL's recommendation is just one of many factors to consider pursuant to R.C. 3109.04(F)(1) and (2). In addition, John ignores the fact that the trial court already found that Amy was not likely to facilitate court-ordered parenting time and companionship rights, one of the other factors enumerated in R.C. 3109.04(F). The court found that neither parent was likely to facilitate such.

{¶ 17} In light of the facts that the trial court agreed with John's position that Amy was not likely to facilitate parenting time and companionship rights, the trial court did

support its decision to deviate from the GAL's proposed shared parenting plan, and the trial court accepted the GAL's recommendation that neither parent should be the residential parent except for school purposes, John has not presented reasons in support of his first assignment of error as required by App.R. 16(A)(7). Accordingly, we overrule his first assignment of error.

{¶ 18} John's second assignment of error provides as follows: "The trial court erred and/or abused its discretion by failing [to] issue temporary support orders and/or by failing to make its support orders retroactive to March 10, 2009; and/or by failing to issue appropriate effective dates for the payment of support."

{¶ 19} Civ.R. 75(N) governs the award of temporary spousal support "[w]hen requested in the complaint, answer, counterclaim, or by motion served with the pleading." John filed his motion for temporary support over two years after he filed his answer and counterclaim. Therefore, John's motion was not filed pursuant Civ.R. 75(N), but rather pursuant to R.C. 3105.18(B), which provides in pertinent part that "[d]uring the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party." In order to determine whether to grant temporary support, and the amount and duration, the trial court must consider the factors listed in R.C. 3105.18(C). *Carreker v. Carreker*, Cuyahoga App. No. 93313, 2010-Ohio-3411, ¶ 25. "The goal of spousal support is to reach an equitable result. And while there is no set mathematical formula to reach this goal, the Ohio Supreme Court requires the trial court to consider all 14 factors of R.C. 3105.18(C) and not base its determination upon

any one of those factors taken in isolation." (Internal citations and quotations omitted.) *Dunagan v. Dunagan*, Cuyahoga App. No. 93678, 2010-Ohio-5232, ¶ 15, citing *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph one of the syllabus.

{¶ 20} John argues that the court was required to grant his motion for temporary support, and absent such action, the court was required to make the final spousal support retroactive to the March 10, 2009 filing of his motion for temporary support. John claims that he was prejudiced by the court's failure to grant temporary spousal support or make the final spousal award retroactive because Amy earned the only income and John was therefore unable to support himself or his children. Finally, he claims that since Amy made over $9,000 per month and took the children on vacation, she should have paid temporary support.

{¶ 21} The trial court found spousal support for John in the amount of $700 per month for five years from the date of the final entry was reasonable. The trial court also found that in light of Amy's action in receiving her bonuses in violation of the court's TRO, additional spousal support in the amount of $300 per month for five years was warranted.

{¶ 22} The trial court expressly considered all factors set forth in R.C. 3105.18(C). On appeal, John addressed only R.C. 3105.18(C)(1)(b), the relative earning abilities of the parties. The trial court cannot consider one factor in isolation. *Dunagan*, 2010-Ohio-5232, ¶ 15. Nonetheless, the trial court specifically held that John failed to provide any underlying documentation to support his request for temporary support and

he did not actually pay the expenses claimed. The trial court considered the earning abilities of the parties as one of the several factors to consider in determining the appropriate amount of spousal support. Other factors included the fact that John received a bachelor's degree and Amy received an associate's degree (R.C. 3105.18(C)(1)(g)), both parties lived beyond their means (R.C. 3105.18(C)(1)(h)), Amy was incapable of supporting two households (R.C. 3105.18(C)(1)(n)), the parties' remaining retirement assets were divided equally (R.C. 3105.18(C)(1)(d)), and both parties are in good health and capable of working full time (R.C. 3105.18(C)(1)(c)).

{¶ 23} Accordingly, the trial court did not abuse its discretion based on the facts of the case in awarding spousal support in the total amount of $1,000 per month for five years from the date of final judgment. John has not raised any errors with the trial court's consideration of the other factors, and we cannot consider one factor in isolation. *Dunagan*, 2010-Ohio-5232, ¶ 15. John's second assignment of error is accordingly overruled.

{¶ 24} John's third assignment of error provides as follows: "The trial court erred and/or abused its discretion in its determination of the parties' incomes and in its calculation and determination of child support; and in its calculation and determination of spousal support." In this assignment of error, John challenges the trial court's decision to use the split-parental-rights worksheet rather than the shared-parenting worksheet, to exclude Amy's bonuses from the calculation for child and spousal support, and to

attribute $37,183 as John's income for calculating child and spousal support.  His third assignment of error is overruled.

**Worksheet**

{¶ 25} John's first argument is that the trial court incorrectly used the split-parenting worksheet under R.C. 3119.023 instead of the shared-parenting worksheet under R.C. 3119.022.  John is partially correct.  A court that issues a shared-parenting order in accordance with R.C. 3109.04 must order an amount of child support to be paid under the child support order that is calculated in accordance with the standard child support schedule and with the R.C. 3119.022 shared-parenting worksheet.  R.C. 3119.24(A)(1).  The statutory language is mandatory.  *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 388, 686 N.E.2d 1108.

{¶ 26} If, however, the amount determined by the shared-parenting worksheet is determined to "be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents," the court may deviate from standard guidelines.  R.C. 3119.24(A)(1).  In considering whether a deviation is warranted, the trial court must specifically state the amount of the obligation determined pursuant to the standard guidelines and the facts underlying the reason for the deviation.  R.C. 3119.24(A)(2).  R.C. 3119.24(B)(1) through (4) defines "extraordinary circumstances of the parents," and includes the following: (1) the amount of time the children spend with each parent; (2) the ability of each parent to maintain adequate housing for the children; (3) each parent's expenses, including child care

expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant; and (4) any other circumstances the court considers relevant. John does not address the deviation aspect of the statute, except to argue that the trial court did not "articulate how the best interests of the children are served by" the deviation.

{¶ 27} In the current case, the court adopted the shared-parenting order and therefore was required by the statute to use the shared-parenting worksheet before relying on R.C. 3119.24(A)(1) in deviating from the amount of support indicated by the worksheet. See *Pauly*, 80 Ohio St.3d at 388. The record indicates the trial court indeed considered the standard child support guidelines. The trial court discussed using the split-parenting worksheet in its discussion of deviating downward from the "standard child support guidelines," which in this case would have been the shared-parenting worksheet contained in John's filings. The shared-parenting worksheet is the only other worksheet available under the standard child support guidelines.

{¶ 28} The trial court specifically found that using the shared-parenting worksheet, in the context of the "standard child support guidelines," was inequitable and not in the children's best interest in this case because each parent had the children half of the time. In other words, the court considered the amount of time the children spend with each parent pursuant to R.C. 3119.24(B)(1). The trial court complied with the mandates of R.C. 3119.24 and therefore did not abuse its discretion by deviating downward from the amount of child support determined through the shared-parenting worksheet. See

*Ramey v. Ramey*, Fairfield App. No. 08-CA-38, 2009-Ohio-2909, ¶ 37. R.C. 3119.24 does not prohibit the trial court from using the split-parenting worksheet as a guide. We accordingly find the trial court did not abuse its discretion in deviating from the standard amount of child support and overrule this portion of John's third assignment of error.

**Parties' Income**

{¶ 29} John advances two arguments with respect to the trial court's handling of the parties' income for child and spousal support determinations. First, John claims that Amy's bonuses should have been included in the determination of support, and second, that the trial court erred by considering his income of $37,183 from 2009 as his income for support purposes.

{¶ 30} The trial court calculated Amy's gross income as $113,187, comprised of her monthly base salary and car allowance. The trial court penalized Amy for violating the court's TRO regarding her bonuses for 2008-2010, awarding John half of the net amount of the bonuses to be paid as spousal support for a period of five years. The trial court excluded the bonuses from its determination of the appropriate amount of child and spousal support because of this award.

{¶ 31} John first argues that the definition of gross income requires the trial court to include Amy's bonuses in her income calculation for both child and spousal support. Gross income for child support purposes is defined in part as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses * * *."

R.C. 3119.01(C)(7). "R.C. 3119.05(D) in turn requires that when calculating gross income from bonuses, the trial court 'shall include the lesser of * * * (1) The yearly average of all * * * bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed; [and] (2) The total * * * bonuses received during the year immediately prior to the time when the person's child support obligation is being computed.'" *Wright v. Wright*, Cuyahoga App. No. 91026, 2009-Ohio-128, ¶ 21. Trial courts are required to include the bonuses in such calculations. *Paulus v. Paulus* (1994), 95 Ohio App.3d 612, 616, 643 N.E.2d 165. Notwithstanding the above, courts have discretion to average income over a reasonable period of years depending on the facts of the case. R.C. 3119.05(H).

{¶ 32} To the contrary, in determining the amount and duration of spousal support, the trial court need only consider the "[t]he *income* of the parties, from all sources," as one of several factors. (Emphasis added.) R.C. 3105.18(C)(1)(a). Therefore, the determination of spousal support is not limited by the definition of gross income used for child support determinations, and John's sole argument relying on such is misplaced. The trial court need only consider all sources of income for spousal support determinations, whereas the definition of gross income for the child support determination requires the inclusion of bonuses in calculating the gross income. John failed to cite any authority, as required by App.R. 16(A)(7), to support his argument that the trial court abused its discretion by excluding Amy's bonuses from its determination of spousal support. This portion of John's third assignment of error is overruled.

{¶ 33} We find, however, that the trial court technically erred by not including Amy's bonus — for the year immediately preceding when the child support obligation was being computed — in the calculation of Amy's gross income for the child support determination. The trial court must include the bonuses in such calculations prior to considering any deviations. *Paulus*, 95 Ohio App.3d at 616.

{¶ 34} Nevertheless, the court's omission constitutes harmless error pursuant to Civ.R. 61. The trial court excluded the bonuses from the child support calculations because it awarded John half the net value of three years of Amy's total bonuses, part of which was spent on the children's vacations they regularly enjoyed during the marriage. R.C. 3119.01(C)(7) does not prohibit the trial court from deviating, pursuant to R.C. 3119.24(A)(1), based on a recalculation through the worksheet without the bonus included as income. The trial court specifically discussed the exclusion of the bonus in calculating the amount of child support, thereby reaching the same result as if the trial court had calculated the amount of child support with the bonuses and then deviated. For these reasons, we find the trial court's error in omitting the bonuses from the child support worksheet did not affect a substantial right of the parties and this portion of John's third assignment of error is overruled.

{¶ 35} Finally, John argues, without citing any case law authority in support, that the trial court incorrectly relied on his 2009 income of $37,310 for the support calculations. He claims his contract was terminated and he was starting a new endeavor that yielded no income as of trial, although he expected to earn approximately

$50,000-$70,000 that year. John failed to present any citations to case law or statutes in support of his assertions as required by App.R. 16(A)(7). See *Strauss v. Strauss*, Cuyahoga App. No. 95377, 2011-Ohio-3831, ¶ 72. We accordingly overrule this portion of John's third assignment of error.

{¶ 36} John's fourth assignment of error provides as follows: "The trial court erred and/or abused its discretion in its division of property and/or by failing to find that the appellee committed economic misconduct." John argues that the trial court erred in dividing the marital assets evenly between the parties in light of Amy's alleged economic misconduct, which includes Amy's liquidation of some retirement assets prior to the divorce, failure to pay the mortgage on the marital residence after she moved out of the home, violation of the TRO regarding the bonuses and personal property, and creation of additional debt during the pendency of the divorce proceedings. John claims he is entitled to $71,860 of the $87,107 remaining marital assets because of the alleged misconduct. His fourth assignment of error is without merit.

{¶ 37} "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4).

{¶ 38} John primarily argues that based on his characterization of Amy's conduct, the court should have found Amy committed economic misconduct. This ignores the trial court's specific findings as follows: both parties committed economic misconduct;

John was liable for half the marital debt Amy paid off by the liquidation of the retirement account; Amy is paying the taxes and penalties associated with the liquidation herself through her bankruptcy proceedings; John was earning income and failed to make any payment toward the residential home mortgage obligation; John lived rent-free for two years during the pendency of the divorce; and each party is responsible for the additional debt created in his or her individual name during the divorce proceeding. With regard to the personal property and the improper use of Amy's bonuses, the trial court awarded John half the net amount of the bonuses and found John's reliance on Amy's pretrial statement to establish the value of personal property at trial was improper. The pretrial statement was not evidence.

{¶ 39} John has not addressed any of the trial court's findings and, therefore, failed to present reasons in support of his fourth assignment of error as required by App.R. 16(A)(7). The trial court did not abuse its discretion in evenly dividing the marital property based on the trial court's finding that both parties committed acts of economic misconduct. John's fourth assignment of error is overruled.

{¶ 40} John's fifth assignment of error provides as follows: "The trial court erred and/or abused its discretion by failing to find the appellee in contempt of its prior orders." The trial court found Amy violated the trial court's orders and awarded John half of the net value of the bonuses Amy wrongly received. The trial court ordered the relief John now seeks. The court additionally noted that both parties "violated Court orders * * *." John's fifth assignment of error is overruled.

{¶ 41} John's sixth assignment of error provides as follows: "The trial court erred and/or abused its discretion by failing to award attorney fees to [John]." His sixth assignment of error is without merit.

{¶ 42} R.C. 3105.73 provides that "In an action for divorce, * * * a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."

{¶ 43} John ignores the trial court's decision that awarding attorney's fees would be inequitable because both parties violated orders and increased the other's attorney fees, and neither party was economically capable of paying the other's attorney fees. John's sole argument is that Amy's conduct increased John's expenses during the divorce proceeding. The trial court agreed. John failed to address the trial court's ruling that he acted to increase Amy's expenses for attorney's fees as well and therefore has not presented reasons in support of his sixth assignment of error as required by App.R. 16(A)(7). His sixth assignment of error is overruled.

{¶ 44} The decision of the trial court is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR