[Cite as *Calac v. Calac*, 2021-Ohio-2618.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KAREN RUSH fka CALAC | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2020CA00167 |
| PETER R. CALAC, et al., | |
| Defendants-Appellees | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2019DR00300 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 28, 2021 |
| APPEARANCES: | |


| | |
|---|---|
| For Plaintiff-Appellant | For Defendants-Appellees |
| PAUL HERVEY<br>4700 Dressler Avenue, N.W.<br>Canton, Ohio 44718 | CHRISTOPHER COLERIDGE<br>Coleridge Law Office, LLC<br>122 Market Avenue, North<br>Canton, Ohio 44702 |

*Hoffman, J.*

**{¶1}** Plaintiff-appellant Karen Rush, fka Calac (hereinafter "Mother"), appeals the judgment entered by the Stark County Common Pleas Court, Family Court Division, granting her a divorce from Defendant-appellee Peter Calac (hereinafter "Father").

STATEMENT OF THE FACTS AND CASE

**{¶2}** Mother and Father were married in 2006, and had one child, born in 2008. Father is a member of the Rincon Band of Luiseno Mission Indians of the Rincon Reservation. Father receives three types of payments from the Rincon tribe generated by revenues from a casino operated on tribal lands. The first is a "true-up distribution" which he receives once a year. The true-up distribution is an equal division among all tribe members of the money remaining each year in the tribe's gaming account. In 2019, he received around $13,000. The second payment is a monthly per capita payment of $5,250, or $63,000 annually. The third payment is a "general welfare" payment of $3,250 a month, or $39,000 annually. The true-up distribution and per capita distribution are taxable income under federal law, but the general welfare payment is not taxable income.

**{¶3}** In July of 2018, Father went to prison. Father gave his mother (hereinafter "Grandmother") financial power of attorney, and Grandmother began paying the bills for both parties.

**{¶4}** Mother filed the instant divorce action on April 3, 2019. During the pendency of the divorce, Grandmother paid all of Mother's bills, while Mother received approximately $45,000 in temporary spousal and child support.

**{¶5}** The case proceeded to trial before a magistrate. In a detailed decision, the magistrate included Father's true-up and per capita distributions as income for purposes of spousal and child support, but excluded the general welfare payments. The magistrate

considered Father's receipt of general welfare payments in dividing the marital assets, and thus awarded Mother $16,292 in assets and Father $7,831 in debt. The magistrate recommended Father pay spousal support in the amount of $2,000 per month and child support in the amount of $515 per month.

{¶6} Mother filed objections to the magistrate's decision, but did not provide the trial court with a copy of the transcript. The trial court considered the objections based only on the decision of the magistrate, the attachments to the decision of the magistrate (child support worksheet and parenting plan), and the arguments of counsel. The court overruled Mother's objections and entered judgment in accordance with the magistrate's decision.

{¶7} It is from the October 27, 2020 judgment of the trial court Mother prosecutes her appeal, assigning as error:

I. THE TRIAL COURT ERRED IN EXCLUDING APPELLEE'S GENERAL WELFARE PAYMENTS FROM COMPUTING HIS INCOME FOR PURPOSES OF SPOUSAL SUPPORT.

II. THE TRIAL COURT ERRED IN EXCLUDING APPELLEE'S GENERAL WELFARE PAYMENTS FROM COMPUTING HIS INCOME FOR PURPOSES OF CHILD SUPPORT.

III. THE TRIAL COURT ERRED IN CALCULATING CHILD SUPPORT BY USING AN INCORRECT DEDUCTION FOR APPELLEE'S HEALTH INSURANCE EXPENSE.

**{¶8}**  At the outset, we note Father has filed a "Motion to Partially Strike Appellant's Reply Brief," arguing the supplemental statement of the case and facts includes facts not supported by the record, as Mother has not provided this Court with a transcript of the proceedings in the trial court, and many of the facts set forth relate to the proceedings on remand to resolve a pending Civ. R. 60(B) motion, which are not a part of this appeal.  Father's motion is granted, and the "supplemental statement of the case and facts" set forth on pages one and two of Mother's reply brief is stricken.

I.

**{¶9}**  In her first assignment of error, Mother argues the trial court erred in failing to include the general welfare payment of $39,000 per year which Father receives from the Rincon tribe in determining spousal support.

**{¶10}**  A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶11}** R.C. 3105.18(C)(1) provides the factors a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support:

> (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment,

and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the

spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

**{¶12}** The goal of spousal support is to reach an equitable result. *Kaechele v. Kaechele,* 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988). Although there is no set mathematical formula to reach this goal, the Ohio Supreme Court requires the trial court to consider all fourteen factors of R.C. 3105.18(C) and "not base its determination upon any one of those factors taken in isolation." *Id.*

**{¶13}** Ohio law does not provide a precise definition of "income" for purposes of spousal support.  In concluding the trial court did not err by excluding mother's income from bonuses for purposes of spousal support, but did err in excluding the same income for purposes of child support, the Eighth District Court of Appeals held:

To the contrary, in determining the amount and duration of spousal support, the trial court need only consider the "[t]he income of the parties, from all sources," as one of several factors. (Emphasis added.) R.C. 3105.18(C)(1)(a). Therefore, the determination of spousal support is not

limited by the definition of gross income used for child support determinations, and John's sole argument relying on such is misplaced. The trial court need only consider all sources of income for spousal support determinations, whereas the definition of gross income for the child support determination requires the inclusion of bonuses in calculating the gross income.

**{¶14}** *MacDonald v. MacDonald*, 8th Dist. Cuyahoga No. 96099, 2011-Ohio-5389, ¶ 32.

**{¶15}** We find Mother has not demonstrated an abuse of discretion in the amount of spousal support. Mother focuses strictly on Father's income as determinative of the amount of spousal support, yet income is only one factor to be considered in fashioning an award of spousal support. The magistrate's decision, which was adopted by the trial court, includes a discussion of all of the factors set forth in the statute, none of which are challenged by Mother except for the income of the parties, and a single factor is not to be considered in isolation. *Kaechle, supra.* The trial court also considered evidence Mother had received $32,000 in temporary spousal support and $12,513 in temporary child support during the pendency of the divorce, yet by her own testimony had not paid any bills in two years from support payments, as Father both directly and via Grandmother continued to pay all marital bills. While the trial court erred in not considering Father's income from general welfare payments in fashioning its spousal support order, the trial court considered such payments in its property division, awarding to mother assets in the amount of $16,292 and assigning to Father debts in the amount of $7,831, noting Father

had money available from his general welfare payments. Unlike child support, which requires all income to be specifically and separately be listed on the child support worksheet, income for setting spousal support does not. As such, income for child support purposes directly affects the amount of child support awarded, while spousal support is not similarly calculated using a formula, but income is merely a factor to be considered. Considering all the factors, we find the trial court did not abuse its discretion in its spousal support order.

{¶16} The first assignment of error is overruled.

II.

{¶17} In her second assignment of error, Mother argues the trial court erred in failing to consider the general welfare payment of $39,000 which Father receives annually as income when calculating child support.

{¶18} R.C. 3119.01(b)(12) defines gross income for purposes of computing child support as follows:

(12) "Gross income" means, except as excluded in division (C)(12) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested;

workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services or national guard, including, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and potential cash flow from any source.

"Gross income" does not include any of the following:

(a) Benefits received from means-tested government administered programs, including Ohio works first; prevention, retention, and contingency; means-tested veterans' benefits; supplemental security income; supplemental nutrition assistance program; disability financial assistance; or other assistance for which eligibility is determined on the basis of income or assets[.]

{¶19} The trial court found as follows concerning the $39,000 Father receives annually in general welfare payments from the Rincon tribe:

The IRS (in Section 139E above) treats Native American Indian general welfare payments in a similar way that TANF and SSI/other social service benefits that are not considered taxable income.[1] **Likewise, general welfare payments would fall under section (a) above under the Ohio Revised Code and are considered a type of public assistance which is not includable in gross income in Ohio for purposes of computing child support.**

**{¶20}** Decision of the Magistrate, August 25, 2020, page 28, adopted by the trial court October 16, 2020, emphasis added.

**{¶21}** The trial court inferentially found the general welfare payments Father receives are means-tested income and thus excluded from gross income for purposes of child support under the Ohio Revised Code.  Mother argues there is "no mention" of means-testing or needs-based tests in federal and tribal statutes establishing the general welfare payments.  However, the Rincon Tribal Code attached to the brief of Mother is not a part of the record before this Court on appeal, and does not appear to have been considered by the trial court.  Further, assuming arguendo the tribal code is properly before this court, it does not affirmatively establish general welfare payments are not means-tested.  In the absence of a transcript demonstrating the general welfare payments were not means-tested income as found by the trial court, we must presume the validity

---

[1] We recognize R.C. 3119.01(b)(12) specifically states gross income for purposes of computing child support includes unearned income, whether taxable or not.  As such, we find the trial court's reference to the federal tax code irrelevant.

of the proceedings below and affirm. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385 (1980).

**{¶22}** The second assignment of error is overruled.

III.

**{¶23}** In her third assignment of error, Mother argues the trial court erred in giving Father a deduction on the child support worksheet for out-of-pocket insurance costs for himself and the child of $19,982. She argues this amount is based on his pre-divorce costs when he covered himself, Mother, and the child, and now he only has to pay insurance costs for the child because his premiums are paid by the Rincon Tribe.

**{¶24}** Mother bases her argument on Exhibit 28, which is a letter from the Rincon Tribe dated December 15, 2017, detailing Father's insurance costs for 2018. In the absence of a transcript, we cannot determine if Father's premiums continue to be paid by the tribe, nor can we find the insurance costs as set forth by the trial court are not supported by the record. We therefore must presume the validity of the proceedings below and affirm. *Knapp, supra.*

**{¶25}** The third assignment of error is overruled.

**{¶26}** The judgment of the Stark County Common Pleas Court, Family Court Division is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Wise, John, J. concur