[Cite as *Rossi v. Rossi*, 2014-Ohio-1832.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 100133 and 100144**

---

# DAVID ROSSI

PLAINTIFF-APPELLEE/
CROSS-APPELLANT

vs.

# DAWN M. ROSSI

DEFENDANT-APPELLANT/
CROSS-APPELLEE

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-11-334986

**BEFORE:** Rocco, J., Jones, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** May 1, 2014

**ATTORNEY FOR APPELLANT**

Margaret E. Stanard
Stanard & Corsi Co., L.P.A.
1370 Ontario St., Suite 748
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**

Gregory S. Costabile
Gregory S. Costabile, Co., L.P.A.
1300 Fifth Third Center
600 Superior Avenue, East
Cleveland, Ohio 44114

**GUARDIAN AD LITEM**

John V. Heutsche
John V. Heutsche Co., L.P.A.
Hoyt Block Bldg., Suite 220
700 West St. Clair Avenue
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

**{¶1}** In this consolidated appeal, defendant-appellant/cross-appellee Dawn Rossi ("Dawn") and plaintiff-appellee/cross-appellant David Rossi ("David") both appeal from a judgment entry of divorce that awarded spousal support, child support, and attorney fees and divided marital debts and assets. Together raising more than twenty assignments of error, the parties challenge virtually every aspect of the trial court's decision, including the amount and duration of spousal support awarded, the division of property, the termination date of the marriage, the allocation of the parties' debts and tax liabilities, the valuation of David's income and businesses, the amount of child support awarded, and the award and amount of attorney fees.

**{¶2}** For the reasons that follow, we affirm the trial court's judgment in part, reverse it in part, and remand the case to the trial court for further proceedings consistent with this opinion.

**Factual Background and Procedural History**

**{¶3}** Dawn and David were married on March 24, 1995. Together, they have five children born May 29, 1995, October 14, 1996, August 23, 2000, October 19, 2002, and October 5, 2004. After nearly sixteen years of marriage, the couple became estranged and separated in January 2011. Dawn filed her complaint for legal separation on January

20, 2011. David filed his complaint for divorce a day later. The cases were consolidated on January 31, 2011.[1]

{¶4} Along with her complaint, Dawn filed a motion for support pendent lite. On May 9, 2011, the magistrate entered an order of temporary support, ordering David to pay spousal support in the amount of $3,500 per month and child support in the amount of $2,125.93 per month (plus a 2 percent fee), retroactive to January 20, 2011. David was also ordered to maintain health insurance coverage for Dawn and the children and to pay most of the expenses for the marital home where Dawn and the children resided, as well as Dawn's car payment and insurance, Dawn's cell phone bill, 90 percent of the children's medical bills, any joint credit card bills, and payments on two timeshares the parties owned while the matter was pending. On August 22, 2011, the parties entered into an agreed judgment entry, which increased David's temporary spousal support obligation to $6,500 per month retroactive to January 20, 2011. Consistent with the prior temporary support order, David also agreed to maintain health insurance coverage for Dawn and the children and to pay the mortgage, taxes, insurance, and costs of landscaping and yard maintenance services, exterminator services, and utilities and internet services related to the marital home, as well as Dawn's car payment and auto insurance, Dawn's cell phone bill, any joint credit card bills, and the costs of the parties'

---

[1] Dawn filed her complaint for legal separation in Case No. DR-11-334967 on January 20, 2011. David filed his complaint for divorce in Case No. DR-11-334986 on January 21, 2011. Because service was perfected first in Case No. DR-11-334986, the court consolidated Case No. DR-11-334967 into Case No. DR-11-334986.

two timeshares while the matter was pending. Under both the May 9, 2011 magistrate's order and August 22, 2011 agreed judgment entry (collectively, the "temporary support orders"), Dawn was required to pay for "any and all of her personal expenses for her and their children."

{¶5} In September 2011, Dawn filed a motion for interim attorney fees to defend the divorce action. The trial court conducted a hearing on the issue, and on January 18, 2012, ordered David to pay $20,000 in interim attorney fees to Dawn's counsel.

{¶6} At the time of the parties' marriage, Dawn worked as a manicurist, and David worked for the Ohio Department of Transportation. Shortly after their marriage, David started his own company, All-Sweep, Inc. ("All-Sweep"), a business providing sweeping, plowing, resurfacing, landscaping, gutter cleaning, pressure washing, and other maintenance services to shopping centers, office buildings, and other commercial properties. He initially operated the business part-time. In September 2003, after the business became profitable and provided sufficient income to support his family, David quit his job with ODOT and operated All-Sweep full time. David thereafter started three other related businesses, Asphalt Specialists, L.L.C. ("Asphalt Specialists"), NJD Leasing, L.L.C. ("NJD Leasing"), and Accurate Ground Cover, L.L.C. ("Accurate Ground Cover"),[2] and also made a substantial investment in an entity known as Spiccia & Rossi Capital Investment ("Spiccia & Rossi"), which holds an interest in two businesses,

---

[2]David is a 100 percent owner of All-Sweep and a part-owner of NJD Leasing, Accurate Ground Cover, and Asphalt Specialists. Accurate Ground Cover and NJD were out of business at the time of trial. Asphalt Specialists was dissolved after trial.

RedPipe Industries, L.L.C. ("RedPipe"), a national importer and distributor of a polypropylene fire protection system, and GreenPipe Industries, L.L.C. ("GreenPipe"), a wholesaler for a polypropylene potable water piping system and industrial chiller line. The investment in Spiccia & Rossi was funded by withdrawals from one of the parties' joint investment accounts and a personal distribution or shareholder loan from All-Sweep, using funds obtained through All-Sweep's line of credit.

{¶7} After the birth of their first child, Dawn became a stay-at-home mom, taking care of the parties' children and managing their household. Dawn was last employed outside the home in May 1996. Although Dawn testified that she had enrolled at and had plans to obtain a nursing degree from Lakeland Community College, she had not begun taking any courses at the time of trial.

{¶8} After numerous pretrial proceedings, the matter proceeded to trial beginning on July 31, 2012. Trial occurred on 12 days over a span of several months, concluding on November 13, 2012.[3] The main focus of the trial surrounded the valuation of David's businesses and income for purposes of determining an equitable distribution of marital property, David's child support obligations, and a reasonable and appropriate award of spousal support.

{¶9} On June 21, 2013, the trial court issued its judgment entry of divorce, dividing the parties' marital assets and liabilities and awarding spousal support, child

---

[3] After several days of trial, the parties entered into an agreed shared parenting plan, adopted by the court on August 8, 2012, that resolved all issues relating to their children except the issue of child support.

support, and $35,000 in additional attorney fees to Dawn.[4] The trial court awarded Dawn spousal support of $12,500 a month for a period of 68 months (with a credit for 22 months of temporary spousal support David had paid since the parties separated) and $2,000 a month in child support. The trial court equally divided the parties' interests in various retirement accounts and personal property, awarded David's interests in his companies to him, and awarded the parties' interest in the family residence and several investment accounts to Dawn. The trial court also allocated the parties' credit card and tax liabilities. To equalize the property division, the trial court ordered David to make a $201,028 "equalization payment" to Dawn, to be paid over a period of five years.

{¶10} Dawn now brings this timely appeal, raising ten assignments of error for review. In his cross-appeal, David raises eleven cross-assignments of error for review. For judicial clarity and ease of discussion, we consider the parties' assignments of error and cross-assignments of error out of order and together where appropriate.

**Law and Analysis**

**Standard of Review**

{¶11} A trial court "must have discretion to do what is equitable upon the facts and circumstances of each divorce case." *Deacon v. Deacon*, 8th Dist. Cuyahoga No. 91609, 2009-Ohio-2491, ¶ 13, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028

---

[4]We commend the trial court for its opinion in this case. The trial court's 49-page judgment entry of divorce is detailed, addresses each issue raised by the parties in a careful and thoughtful manner, provides a well-reasoned analysis of the applicable facts and law, and clearly identifies the testimony and documentary evidence supporting its findings.

(1989). We, therefore, review a trial court's decision in a domestic relations case under an abuse of discretion standard. *Id.*, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130, 541 N.E.2d 597 (1989). This same standard applies to the trial court's decisions relating to awards of spousal and child support and the division of marital property. *Chattree v. Chattree*, 8th Dist. Cuyahoga No. 99337, 2014-Ohio-489, ¶ 6, citing *Booth* at 144; *Wright v. Wright*, 8th Dist. Cuyahoga No. 91026, 2009-Ohio-128, ¶ 13, citing *Booth* at 144. An abuse of discretion connotes more than an error of law or judgment; it "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**Division of Marital Property**

{¶12} R.C. 3105.171(C)(1) mandates an equal division of marital property, or, "if an equal division is inequitable, the court must divide the marital property equitably." *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 37, citing *Neville v. Neville*, 99 Ohio St.3d 275, 277, 2003-Ohio-3624, 791 N.E.2d 434. In making a division of marital property and in determining whether to make, and, if so, the amount of any distributive award, the trial court must consider the factors outlined in R.C. 3105.171(F). *Id.* Such factors include, among others: the duration of the marriage; the assets and liabilities of the spouses; the desirability of awarding the family home, or the right to reside in the family home for a reasonable period of time, to the spouse with custody of the children of the marriage; the liquidity of the property to be distributed; the economic desirability of retaining intact an asset or an interest in an asset; the tax consequences of

the property division; and any retirement benefits of the spouses. R.C. 3105.171(F)(1)-(10). When reviewing a trial court's division of marital property, we consider "whether the property division, as a whole, was an abuse of discretion." *Strauss*, 2011-Ohio-3831 at ¶ 35, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984).

{¶13} In this case, the trial court stated that there was "no evidence that an equal division of marital property would be inequitable" and found that an equal division of the parties' marital assets was, therefore, appropriate. The trial court separately addressed each of the factors specified in R.C. 3105.171(F) in setting forth its division of the parties' marital property and in ordering payment of a $201,028 distributive award to Dawn to equalize the division of the parties' marital assets and liabilities. Competent, credible evidence supports each of the trial court's findings under R.C. 3105.171(F).

{¶14} With respect to the trial court's division of marital property, Dawn claims that the trial court undervalued David's interests in several of his businesses and abused its discretion in accepting David's expert's opinion as to the value of All-Sweep. She also claims that David's interest in Spiccia & Rossi should have been divided equally between the parties instead of awarded exclusively to David. David claims that the trial court applied the wrong marriage termination date in valuing the parties' martial property, overvalued his interest in Asphalt Specialists, and abused its discretion in refusing to permit the introduction of new evidence supporting a change in the valuation of Asphalt Specialists after the close of trial. David also claims the trial court erred in

characterizing the full value of a Genworth IRA account, into which he had deposited the proceeds of a deferred compensation account he had maintained when employed by ODOT, as marital property and in awarding the parties' full interests in the marital residence and a Charles Schwab investment account to Dawn. Both parties also challenge the trial court's allocation of the parties' credit card debt and tax liabilities. We address each of these issues in turn.

### Valuation of David's Businesses

{¶15} In her seventh and eighth assignments of errors, Dawn challenges the trial court's valuation of David's interests in four of his businesses — Accurate Ground Cover, NJD Leasing, Spiccia & Rossi, and All-Sweep — and the trial court's decisions (1) to accept the opinion of David's expert over the opinion of her expert regarding the value of All-Sweep and (2) to award the full value of David's interest in Spiccia & Rossi to David.

{¶16} Dawn's seventh and eighth assignments of error state:

VII. The trial court's refusal to accept the stipulations of the parties as to the value of three of the business entities was against the manifest weight of the evidence.

VIII. The trial court's acceptance of Appellee's expert's [fourth] and final opinion containing a math error which double counted the depletion of working capital was against the manifest weight of the evidence.

{¶17} The trial court's valuation of an asset in a divorce case is a question of fact reviewed under a manifest weight of the evidence standard. *See Kapadia v. Kapadia,* 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 24. Accordingly, an appellate court will

not reverse a trial court's valuation of an asset if it is supported by some competent, credible evidence. *Id.*, citing *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984), and *Haynes v. Haynes*, 8th Dist. Cuyahoga No. 92224, 2009-Ohio-5360. In determining whether competent and credible evidence exists, we are "'guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of their testimony.'" *Corwin v. Corwin*, 12th Dist. Warren Nos. CA2013-01-005 and CA2013-02-012, 2013-Ohio-3996, ¶ 40, quoting *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 11. Dawn's claimed errors regarding the valuation of David's businesses are meritless.

**Valuation of Interests in Accurate Ground Cover, NJD Leasing, and Spiccia & Rossi**

{¶18} With respect to Accurate Ground Cover and NJD Leasing, Dawn contends that the trial court's valuation of David's interests in each of those business at $0 was against the manifest weight of the evidence because the parties had previously stipulated that the businesses had values of $37,000 and $8,400, respectively, as of December 31, 2010. David and his accountant testified at trial, however, that these two companies ceased operations and liquidated their assets in 2012. Based on this uncontroverted evidence, the trial court reasonably determined that, as of the date of trial, David's interests in these companies had zero value. *See, e.g., Deacon*, 2009-Ohio-2491 at ¶

36-38 (where parties had stipulated to value of marital home as of a year prior to trial, trial court did not abuse its discretion in considering testimony of real estate appraiser that the value of the home had declined since the time of the stipulation due to declining real estate market).

{¶19} With respect to David's interest in Spiccia & Rossi, Dawn argues that David's interest in the company should have been divided equally between the parties and that the trial court's valuation of David's interest in the company at $0 was against the manifest weight of the evidence. In its judgment entry, the trial court details the facts and evidence upon which it relied for its $0 valuation of David's interest in Spiccia & Rossi, including testimony from David and James Mitchell, co-owner and managing partner of RedPipe and GreenPipe, the two companies in which Spiccia & Rossi has invested, regarding the lack of profitability and lack of future business prospects for the companies, due, in large part, to Underwriters Laboratories' denial of certification for one of companies' primary products and the fact that the German manufacturer of the product sold by RedPipe had placed the company on probation for failing to meet sales commitments. The trial court determined that this testimony, combined with evidence that (1) any profits that might be received in the future would be committed to repayment of loans obtained by All-Sweep to fund the investment and (2) if the loans were not repaid, David would have to declare the loans as personal income, resulting in substantial tax liability, warranted awarding David's interest in Spiccia & Rossi to him at zero value.

**{¶20}** Upon a review of the record, we find that competent, credible evidence supports the trial court's valuation of David's interests in Accurate Ground Cover, NJD Leasing, and Spiccia & Rossi at $0 and that, under the circumstances, the trial court's award of David's interest in Spiccia & Rossi entirely to him, rather than dividing it between the parties, was reasonable and not an abuse of discretion.

### Valuation of All-Sweep

**{¶21}** With respect to the valuation of All-Sweep, the parties offered two competing experts with substantially different opinions as to the valuation of All-Sweep. Although both experts used the capitalization of earnings method[5] in valuing the business, David's expert, Charles Cuini, CPA, CVA ("Cuini") opined that the fair market value of All-Sweep was $690,000, and Dawn's expert, Terri Lastovka, CPA, JD, ASA ("Lastovka"), opined that the fair market value of the company was $1,513,000. In its judgment entry, the trial court provided a comprehensive summary of the experts' disparate approaches to valuing the company and explained in detail why it found Cuini's valuation, after "thoroughly review[ing] the [experts'] reports (6 in all), supporting calculations, trial exhibits, and testimony" for "many hours and days," to be "the more convincing opinion as to All-Sweep's value."

**{¶22}** In ascertaining the value of a business, a trial court has discretion to weigh the testimony offered by the parties' valuation experts. *Gentile v. Gentile*, 8th Dist.

---

[5]Under the capitalization of earnings method, the value of a business is determined by calculating the present value of the cash flows or profits expected to be generated by the business in the future.

Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 62, citing *Bryan v. Bryan*, 8th Dist. Cuyahoga No. 97817, 2012-Ohio-3691. "On appeal, our duty is not to require the adoption of any particular method of valuation, but to determine whether, based upon all the relevant facts and circumstances, the court abused its discretion in arriving at a value." *Gentile* at ¶ 63, citing *Focke v. Focke*, 83 Ohio App.3d 552, 615 N.E.2d 327 (2d Dist.1992), and *James v. James*, 101 Ohio App.3d 668, 656 N.E.2d 399 (1st Dist.1995).

{¶23} Based upon our review of the record, we find there is competent, credible evidence supporting the trial court's determination that Cuini's valuation was a more accurate valuation of All–Sweep. Whereas Cuini interviewed David twice as part of his valuation process to obtain information regarding his business practices, contracts, and revenues, Lastovka never interviewed David, an omission that she acknowledged in her reports was "not in accordance with Uniform Standards of Professional Appraisal Practice." Whereas Cuini reconciled the company's records with IRS filings to adjust the company's net income figures for personal expenses paid by the company, the trial court found that Lastovka employed a "highly subjective process" to adjust the company's net earnings for personal expenses based on her assumptions regarding what expenses were "personal." Whereas Cuini used a simple average of net cash flow in valuing the company, Lastovka used a weighted average (resulting in a much higher valuation of the company), claiming that increased revenues in 2011 and 2012 were more indicative of the company's future performance than its past earnings, even though only six months of 2012 earnings were available at the time of trial.

**{¶24}** We cannot say that the trial court abused its discretion in accepting Cuini's opinion regarding the valuation of All-Sweep and or that the valuation of All-Sweep at $690,000 was against the manifest weight of the evidence. Accordingly, Dawn's seventh and eighth assignments of error are overruled.

**Marriage Termination Date**

**{¶25}** In his second cross-assignment of error, David contends that the trial court abused its discretion in selecting July 31, 2012, the date of commencement of the final hearing, as the date of termination of the parties' marriage for purposes of valuing the parties' marital assets.

**{¶26}** David's second cross-assignment of error states:

II. The trial court erred and abused its discretion by failing to apply the date of the court's decision as the termination date of the marriage.

**{¶27}** David argues that due to "the cyclical nature of the economy, stock market, and real estate market," the "appropriate date" for termination of the marriage should have been June 21, 2013, the date of the trial court's judgment entry, because "selecting a date to value assets nearly one year earlier than the final decision will not result in an equitable allocation of property." We disagree.

**{¶28}** Pursuant to R.C. 3105.171(A)(2), the date of the final hearing for divorce is presumed to be the appropriate termination date of the marriage in dividing marital property unless the trial court determines that use of that date would be inequitable. David has not identified any basis upon which use of the final hearing date as the marriage termination date in this case would be inequitable.

**{¶29}**   Because the value of an asset may change over time, the court must select a date as of which to value marital assets.  The parties stipulated to the values of the parties' interests in the marital residence and the Schwab account as of May 10, 2012 and July 23, 2012, respectively.  No evidence was presented that the values of these assets had changed as of the date of commencement of the divorce hearing.  Accordingly, the trial court used the parties' stipulated values in determining the proper distribution to be made of those marital assets.  Simply because the value of assets may change between the time the divorce hearing is commenced and the time a final judgment is entered does not make it inequitable to use the final hearing date as the marriage termination date in valuing marital assets.  David has cited no authority supporting the use of the date of the final judgment entry as the marriage termination date under such circumstances.

**{¶30}** Moreover, use of the date of final judgment as the marriage termination date in valuing and distributing marital property would be virtually unworkable.  Evidence of the value of the parties' marital assets and liabilities must be provided before the trial court can make a property distribution.  Use of David's proposed marriage termination date would require the parties, during the divorce hearing, to guess when the final judgment of divorce might be entered and then speculate as to what the value of the parties' marital assets and liabilities might be as of that uncertain date in the future.

**{¶31}**   We find no abuse of discretion in the trial court's selection of the date of commencement of the final divorce hearing as the marriage termination date.  David's second cross-assignment of error is overruled.

**New Evidence Regarding the Valuation of Asphalt Specialists**

{¶32} In his seventh cross-assignment of error, David contends that the trial court abused its discretion in denying his motion for consideration of supplemental evidence relating to his interest in Asphalt Specialists.

{¶33}  David's seventh cross-assignment of error states:

VII.  The trial court erred and abused its discretion by denying appellee/cross-appellant's motion to hear new evidence.

{¶34} David filed his motion for consideration of supplemental evidence on  June 7, 2013.  He sought to introduce evidence that, six months after the trial had concluded, Asphalt Specialists had dissolved, such that his interest in the company now had a value of $0, rather than $43,000, as the parties had previously stipulated.  The trial court denied David's motion, explaining that the trial court had valued the parties' assets as of the date of commencement of the final divorce hearing — at which time it was undisputed the value of David's interest in Asphalt Specialists was $43,000 — and would not reopen the matter for presentation of new evidence relating to events that post-dated the hearing because to do so "would prevent finality."  We agree.

{¶35}  Many assets change value over time.  If a trial court was required to consider new evidence every time an asset increased or decreased in value between the date of trial and the date the trial court issued its decision, litigation over valuation issues could continue indefinitely.  Accordingly, we find no abuse of discretion in the trial

court's denial of David's motion for consideration of supplemental evidence. David's seventh cross-assignment of error is overruled.

**Marital Residence and Charles Schwab Account**

{¶36} David's eighth and ninth cross-assignments of error state:

VIII. The trial court erred and abused its discretion by failing to equitably divide the parties' Charles Schwab account.

IX. The trial court erred and abused its discretion by awarding the marital residence to appellant as said decision was against the manifest weight of the evidence.

{¶37} In his eighth and ninth cross-assignments of error, David challenges the trial court's award of the parties' entire interest in the marital residence and the Charles Schwab investment account to Dawn, rather than equally dividing the parties' interests in the assets between them, on the ground that "both assets are highly cyclical [and] will have continued to steadily increase in value." David also argues that the trial court abused its discretion in awarding the marital residence to Dawn rather than to him given that he has a liberal visitation schedule with his children and that Dawn dislikes his brother, who lives next door. David's arguments are meritless.

{¶38} The trial court determined that Dawn should be awarded the marital home because she is the primary caretaker of the parties' five children, the children are accustomed to living at the home and attending Mayfield Schools, and Dawn and the children require a home the size of the marital residence. The trial court's findings are supported by competent, credible evidence in the record.

{¶39} Further, the parties agreed that David should be awarded his full interest in All-Sweep as part of the property distribution. Because David was awarded his full interest in All-Sweep, valued at $690,000, the trial court appropriately awarded other of the parties' marital assets, including the parties' Charles Schwab investment account and the parties' interest in the marital residence, to Dawn. As discussed above, the fact that certain marital assets awarded a party may increase or decrease in value between the time trial commences (as of which time the assets are valued) and the time of the final judgment of divorce does not render the property distribution unfair or inequitable. The trial court did not abuse its discretion in awarding the marital residence and Charles Schwab account to Dawn. David's eighth and ninth cross-assignments of error are overruled.

**The Genworth IRA Account**

{¶40} David's first cross-assignment of error states:

I. The trial court erred and abused its discretion by failing to award appellee/cross-appellant with his separate interest in the Genworth Deferred Compensation Fund.

{¶41} In his first cross-assignment of error, David claims that the trial court abused its discretion by failing to award him his separate interest in a Genworth IRA account into which David had deposited the proceeds of a deferred compensation account he had maintained when employed by ODOT. David claims that because he contributed

to the account for over 21 years, and the parties were married for only 8½ years of that time, 60 percent of the account should be considered David's separate property.

{¶42} A trial court's characterization of property as marital or separate property is a mixed question of law and fact and will not be reversed unless it is against the manifest weight of the evidence. *Williams v. Williams*, 8th Dist. Cuyahoga No. 95346, 2011-Ohio-939, ¶ 8, citing *Torres v. Torres*, 8th Dist. Cuyahoga Nos. 88582 and 88660, 2007-Ohio-4443, ¶ 14. Once property is characterized as marital or separate property, the distribution of that property will not be disturbed absent an abuse of discretion. *Williams* at ¶ 8, citing *Larkey v. Larkey*, 8th Dist. Cuyahoga No. 74765, 1999 Ohio App. LEXIS 5174 (Nov. 4, 1999). Marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). Separate property includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii).

{¶43} A party asserting that an asset is separate property has the burden of proving that claim by a preponderance of the evidence. *Hall v. Hall*, 2d Dist. Greene No. 2013 CA 15, 2013-Ohio-3758, ¶ 14, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). If separate property has been commingled with marital property, i.e., put together into a common fund, the party seeking to have an asset treated as separate property must also prove by a preponderance of the evidence that the property

can be traced to its prior separate identity. *Strauss*, 2011-Ohio-3831 at ¶ 49, citing *Williams* at ¶ 10; *see also* R.C. 3105.171(A)(6)(b).

{¶44} David testified that when he left ODOT in 2003, he had $95,000 in a deferred compensation account and that he "rolled over" that amount into the Genworth IRA, which he opened in January 2004. The value of the Genworth IRA as of the time of trial was $147,725. David testified, however, that he did not know, and had no documentation showing, the balance of his deferred compensation account at the time of the parties' marriage. Nor did he offer any evidence regarding the history of payments made to the deferred compensation account before or during the marriage. Because David offered no evidence as to what portion of the $95,000 in the deferred compensation account was premarital (i.e., contributions made prior to March 24, 1995) as opposed to marital (i.e., contributions made on or after March 24, 1995), the trial court found that David "failed to meet his burden of proving not only the amount of his premarital portion of the Deferred Compensation Account in the Genworth IRA, but also that the premarital portion retained its separate identity." The trial court held, therefore, that the full amount of the Genworth IRA account was marital property.

{¶45} Based on the foregoing, we find no error in the trial court's characterization of the Genworth IRA (in its entirety) as marital property. *See, e.g., Deacon*, 2009-Ohio-2491 at ¶ 43-46 (where husband failed to present any documentation to support self-serving testimony that one-third of annuity was separate property, "trial court

was free to disbelieve" his testimony).  David's first cross-assignment of error is overruled.

**Credit Against Temporary Support Arrearages for David's Payment of the Children's Expenses**

**{¶46}** Dawn's third and fourth assignments of error state:

III.  The trial court erred and abused its discretion in giving Appellee a credit against his support arrearage for expenses incurred on behalf of the children and charged on Appellee's credit card which was then also divided as marital debt.

IV.  The trial court erred and abused its discretion by giving Appellee credit for "gifts" to the children without any supporting documentation and in contravention of the temporary support order.

**{¶47}** David's fourth cross-assignment of error states, in relevant part:

IV.  The trial court erred and abused its discretion by wrongly interpreting Exhibit 99 * * *.[6]

**{¶48}**  At the time of trial, David owed $45,477.45 in support arrearages due to the retroactivity of the May 9, 2011 and August 22, 2011 temporary support orders. David argued that he was entitled to a credit of $27,999.92 against those arrearages for expenses he paid on behalf of the parties' children, which he claimed Dawn was required

---

[6] David's fourth cross-assignment of error states in full: "The trial court erred and abused its discretion by wrongly interpreting Exhibit 99 and offsetting the parties['] 2011 and 2012 tax liability with the arrearage balance resulting in an inequitable allocation of property."  Because this cross-assignment of error involves two very different issues, we address the portion of David's fourth cross-assignment of error that relates to the award of a credit against support arrearages here and address the portion of that cross-assignment of error that relates to the allocation of tax liabilities in the section that addresses that issue.

to pay under the temporary support orders. The trial court found that $13,224.63 of the $27,999.92 in expenses claimed by David were personal expenses of the children Dawn was obligated to pay under the temporary support orders. Accordingly, the trial court awarded David a credit of $13,224.63 against his support arrearages for these expenses.

{¶49} In support of his request for a credit against arrearages, David introduced a printout or summary of accounts from All-Sweep, itemizing the checks written from All-Sweep's account (including the payor, date, and amount) for the payment of expenses on behalf of the children, which David claimed were Dawn's obligation. Dawn did not object to the admissibility of this document at trial. David also testified regarding what the expenditures were for.

{¶50} In her third and fourth assignments of error, Dawn claims that the trial court erred in granting David a $13,224.63 credit against support arrearages because David failed to present documentation supporting the "summary" of expenses he claimed to have paid on behalf of the children and presented insufficient evidence that the expenditures he made for the children were "necessary" expenditures Dawn was required to pay for as opposed to "gifts" from David to the children.

{¶51} In his fourth cross-assignment of error, David argues that the trial court "wrongly interpreted" the printout of expenditures he claimed to have made on behalf of the parties' children and should have provided an additional offset against support arrearages for all of his son's car payments (totaling $9,683.90), his son's car insurance payments (totaling $2,591.89), and "medical non-covered expenses for the children and

for Dawn" (totaling $2,499.50) that he paid.   David claims that he is entitled to a total credit against arrearages of $27,999.92 rather than the $13,224.63 ordered by the court.

**{¶52}** Under R.C. 3121.45, the payment of money directly to a child who is subject to a support order is deemed a gift, not a support payment.[7]   A similar rule applies to expenditures made on behalf of a child outside a child support order.   *See, e.g., Hurley v. Austin*, 8th Dist. Cuyahoga No. 99992, 2013-Ohio-5592, ¶ 29 (payments made to school on behalf of the children or to mother directly after the issuance of temporary support order "were appropriately treated as gifts"); *State v. Ferguson*, 10th Dist. Franklin No. 12AP-282, 2012-Ohio-6231, ¶ 14 ("Unless made to satisfy another obligation, the payment of monies and buying of items or providing financial assistance directly to the child instead of the child support enforcement agency is by law deemed a gift and not child support."); *Ruark v. Smith*, 10th Dist. Franklin No. 04-AP-1018, 2005-Ohio-3370, ¶ 9-10 (payments for clothes and school lunches were gifts under R.C. 3121.45); *see also In re Custody of Harris*, 2d Dist. Champaign  No. 2005-CA-27, 2006-Ohio-3746, ¶ 27 (interpreting predecessor statute, R.C. 2301.36(A), "to mean that monies spent on additional purchases and items other than child support are presumed gratuitous"); *Spier*

---

[7] R.C. 3121.45 provides, in relevant part:

> Any payment of money by the person responsible for the support payments under a support order to the person entitled to receive the support payments that is not made to the office of child support, or to the child support enforcement agency administering the support order * * * shall not be considered a payment of support under the support order and, unless the payment is made to discharge an obligation other than support, *shall be deemed to be a gift.*   (Emphasis added.)

*v. Spier,* 7th Dist. Mahoning No. 05 MA 26, 2006-Ohio-1289, ¶ 27-32 (trial court has discretion to credit in-kind payments made while divorce is pending toward support arrearage where presumption that payment was a gift is rebutted).

**{¶53}** In this case, the $13,224.63 in expenditures the trial court credited against the temporary support arrearages due Dawn included charges for new iPhones, cell phone expenses, iTunes downloads, myschoolaccount.com charges, and expenses for uniforms, sports equipment, and extracurricular activities. The expenditures were apparently made from January 24, 2011 to June 16, 2012 (both prior to and after issuance of the temporary support orders). David presented no evidence that any of these expenditures on behalf of his children were intended as anything other than gifts.

**{¶54}** Under the May 9, 2011 and August 22, 2011 temporary support orders, Dawn was required to pay for "any and all of *her* personal expenses for her and their children." (Emphasis added.) There was no evidence that the expenditures for which David sought a credit against support arrearages included any of Dawn's expenses for her and their children. There is nothing in the temporary support orders that obligated Dawn to reimburse David for any "gifts" he gave to the children or any other expenditures David chose to make on behalf of the children during the time they were with him.

**{¶55}** Since there was no evidence that David's expenditures on behalf of his children were intended to satisfy his support obligation or any other obligation to Dawn or the children, they must be regarded as gifts and, as such, were improperly credited

against the support arrearages due Dawn. Accordingly, Dawn's third and fourth assignments of error are sustained.

{¶56} With respect to David's fourth cross-assignment of error, we find no error in the trial court's refusal to provide a credit against support arrearages for amounts David paid for his son's car payments, his son's car insurance payments, and "medical non-covered expenses for the children and for Dawn." As the trial court explained, David presented no evidence that he paid more than his share of the medical expenses he was required to pay under the temporary support orders, and there was nothing in the temporary support orders relating to payment of his son's car expenses. Further, David testified that until shortly before trial, the vehicle his son was driving was listed on All-Sweep's financial statements as a company vehicle. Accordingly, David's fourth cross-assignment of error is overruled to the extent it relates to David's request for credits against arrearages.

### Allocation of Marital Debt and Liabilities

{¶57} The parties also challenge the trial court's allocation of their debts and liabilities.

#### Allocation of Credit Card Debt

{¶58} Dawn's first and second assignments of error state:

I. The trial court erred and abused its discretion when it divided the post-filing debt incurred by the Appellee as a marital debt because that had the effect of nullifying the trial court's temporary orders and resulted in an unequal division of property.

II.   The trial court erred and abused its discretion in negating its prior orders regarding interim attorney fees by later "dividing" those same fee charges on Appellee's credit card as marital debt.

{¶59} David's sixth cross-assignment of error states:

VI.   The trial court erred and abused its discretion by failing to equalize the debt allocation of the parties against the manifest weight of the evidence.

{¶60} In her first and second assignments of error, Dawn argues that the trial court abused its discretion in characterizing $16,441.58 in post-divorce filing credit card debt on credit cards in Dawn's name and $37,195.96 in post-divorce filing credit card debt on credit cards in David's name as "marital debt," claiming that it had the effect of "nullifying" the trial court's temporary support orders and interim attorney fee award and resulted in an inequitable division of property.   Dawn contends that the trial court should have classified the parties' respective credit card debt as "separate debt" and held that each party was separately responsible for the post-filing debts he or she incurred instead of including the parties' credit card debt in the division of marital property.

{¶61} In his sixth cross-assignment of error, David likewise challenges the trial court's allocation of the parties' credit card debt, claiming that it is "inherently unfair" and "inequitable" that he was ordered to retain $37,195.96 in credit card debt while Dawn was ordered to retain only $16,441.58 in credit card debt as part of the property division.

{¶62} The trial court must take into account the parties' "marital debt" when dividing marital property.   *Chattree*, 2014-Ohio-489 at ¶ 8, citing *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 14.   Marital debt includes any debt that is incurred during the marriage for the joint benefit of the parties or for a valid marital purpose.

*Cooper v. Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 18, citing *Nichols-Ross v. Ross*, 12th Dist. Butler No. CA2008-03-090, 2009-Ohio-1723, ¶ 26. Similar to assets, debts accumulated during the marriage are presumed to be marital debts. *Cooper* at ¶ 18. Accordingly, when a debt is incurred during the marriage, the burden is on the party seeking to have the debt classified as a separate debt to demonstrate, by a preponderance of the evidence, that the debt was the separate obligation of the other spouse or was not for a valid marital purpose. *Id.* The mere fact that a debt is in the name of one spouse alone is not enough to establish that the debt was the spouse's separate debt. *Id.*, citing R.C. 3105.171(H) and *Kohus v. Kohus*, 12th Dist. Clermont No. CA2002-07-055, 2003-Ohio-2551, ¶ 21.

**{¶63}** It was undisputed that at the time of trial, there was a $37,195.96 total balance on two credit cards in David's name that David used exclusively after the divorce filing, and a $16,441.58 balance on five credit cards in Dawn's name that Dawn used exclusively after the divorce filing. David testified that he used his credit cards for health insurance payments for himself and the family, attorney fees for a criminal case he was involved with, payment of Dawn's attorney fees, and other personal expenses, including food, toiletries, and entertainment for himself and the parties' children. Dawn testified that she used her credit cards to pay for living expenses for herself and her children, including expenses for food, clothing, personal grooming, and the children's extracurricular activities, and household cleaning, repair, and maintenance expenses.

**{¶64}** The trial court included the parties' post-filing credit debt in its allocation of parties' marital liabilities and determined it would be "fair and equitable" to allocate David's post-filing credit card debt to David and Dawn's post-filing credit card debt to Dawn. The classification of the parties' post-filing credit card debt as marital debt and its inclusion in the division of marital assets and liabilities (with David assuming $37,195.96 in credit card debt and Dawn assuming $16,441.58 in credit card debt) had the net effect of decreasing the amount of the equalization payment to Dawn.

**{¶65}** Following a careful review of the record, we find that the trial court's classification of the parties' post-filing credit card debt as marital debt is against the manifest weight of the evidence. There was no evidence that the parties' credit card account balances at the time of trial were the result of expenses incurred for the "joint benefit" of the parties or for a "valid marital purpose." Dawn testified that the charge accounts in her name were opened after the parties' divorce filing and that she used the accounts exclusively to pay for her and the children's personal expenses. Although it is unclear from the record when the two credit card accounts in David's name were opened, David similarly testified that he used his credit cards after the divorce filing exclusively for his expenses. Neither party claimed that any of their credit card account balances were attributable to marital expenses pre-dating the parties' separation or for a joint marital purpose. *See, e.g., Davis v. Davis,* 7th Dist. Monroe No. 831, 2000 Ohio App. LEXIS 6183, *9 (Dec. 22, 2000) (credit card debt appellant acquired after parties separated on own personal credit card "was not marital and therefore, not subject to

division"); *Currey v. Currey,* 5th Dist. Holmes No. 09 CA 13, 2010-Ohio-2936, ¶ 30 (trial court properly held appellant responsible for her credit card balances after the date of the parties' separation where the parties lived physically and financially separate and apart for more than two years prior to the decree of divorce); *Brokaw v. Brokaw*, 8th Dist. Cuyahoga No. 92729, 2010-Ohio-1053, ¶ 20-22 (trial court did not abuse discretion in making wife responsible for credit card debt she incurred after husband left the marital home in the "absence of evidence to show that the debt had been incurred for a joint purpose").

{¶66} Furthermore, the treatment of the parties' post-filing credit card debt as a marital debt would have the effect of undermining the trial court's prior orders in this case and, as such, would be inequitable. The record reflects that Dawn's credit card balances included charges for her and the children's personal expenses — expenses that were to have been paid out of the temporary spousal support David had already paid to Dawn. Similarly, the record reflects that David's credit card balances included the family's health insurance costs and Dawn's attorney fees — expenses David was required to pay under the temporary support orders and interim attorney fee award to Dawn. David should not be "double charged" for Dawn's personal expenses — first, by paying Dawn spousal support to cover her expenses and, then, by having her personal credit card debt related to those expenses included as part of the marital property division. Likewise, the value of Dawn's prior support and attorney fees awards should not be diminished by having David's personal credit card debt related to those expenses included

as part of the marital property division.  Accordingly, Dawn's first and second assignments of error are sustained.   David's sixth cross-assignment of error is overruled.  We remand the matter and direct that the trial court adjust the property division to reflect the classification of the parties' post-filing credit card debt as separate debt.

### Tax Liabilities

{¶67}   The parties also challenge the trial court's allocation of their tax liabilities.  In her fifth assignment of error, Dawn contends that the trial court erred in zeroing out David's support arrearages for Dawn's share of the parties' tax liability for 2011 and 2012.  In his third and fourth cross-assignments of error, David claims that the trial court erred in failing to include the parties' 2010 and 2013 tax liabilities in its allocation of the parties' marital debt and in offsetting Dawn's share of the parties' 2011 and 2012 tax liabilities against the balance of the arrearages David owed Dawn under the May 9, 2011 and August 22, 2011 temporary support orders.

{¶68} Dawn's fifth assignment of error states:

V.   The trial court erred and abused its discretion when it reduced the support arrearage Appellee owed Appellant under the temporary support order to zero and order[ed] Appellant to file joint tax returns with Appellee for the tax years 2011 and 2012.

{¶69}   David's third and fourth cross-assignments of error state, in relevant part:

III.   The trial court erred and abused its discretion by failing to consider the 2010 and 2013 tax liability of the parties thus resulting in an inequitable allocation of property.

IV.   The trial court erred and abused its discretion by * * * offsetting the parties['] 2011 and 2012 tax liability with the arrearage balance resulting in an inequitable allocation of property.

**{¶70}**   The trial court determined that because Dawn had received the benefit of the income David earned in 2011 and 2012, including payment of her mortgage, taxes, home insurance, landscaping and yard maintenance services, utilities,  car payment and auto insurance, cell phone bill, and health insurance, it would be "equitable to allocate one-half of the 2011 and 2012 unpaid federal and state tax obligations to [Dawn] by giving [David] a credit against support arrearages."[8]   Concluding that Dawn's share of the 2011 and 2012 taxes would likely exceed the $32,252.82 balance of the existing arrearages,[9] the trial court reduced the arrearages to zero.   Both parties claim this was error.   Dawn argues that because David had not prepared or filed his 2011 and 2012 tax returns at the time of trial, his ultimate tax liability was "speculative" and that the trial court, therefore, "did not have sufficient evidence before it to [make] an informed equitable division of these speculative liabilities."   David argues that the trial court

---

[8] The trial court, however, excepted from Dawn's share of the tax obligations for 2011 or 2012 any liability associated with the "shareholder loan" David took from All-Sweep to invest in Spiccia & Rossi.   David's accountant testified that if David did not repay the "shareholder loan" from All-Sweep that he used to invest in Spiccia & Rossi, then it would be treated as a distribution from All-Sweep, which would be taxable income.   The court held that if any tax liability associated with that transaction were to be attributed to tax years 2010, 2011, or 2012, any additional taxes, interest, or penalties would be David's sole responsibility.

[9] $32,252.82 was the balance of the temporary support arrearage after accounting for the credit the trial court improperly awarded to David for payment of certain of the children's expenses, as discussed above.

misread the projections of the parties' 2011 tax liability, resulting in an inequitable division of that tax liability. David also argues that the trial court erred in failing to allocate the parties' 2010 tax liability as part of the property division and in failing to provide a methodology for calculating the parties' 2012 and 2013 tax liabilities.

{¶71} With respect to the parties' 2010 tax liability, the undisputed evidence at trial was that the parties' 2010 tax liability was paid in 2011. Accordingly, the value of the remaining marital assets at the time of trial would reflect payment of that debt, and the trial court, therefore, did not abuse its discretion in failing to credit David for payment of that liability in its allocation of marital property.

{¶72} With respect to the trial court's allocation of the parties' 2011 and 2012 tax liabilities, these tax liabilities were marital debts that the court had the discretion to divide equally. *Norris v. Norris*, 7th Dist. Mahoning No. 01 CA 173, 2002-Ohio-5211, ¶ 19, citing *Miller v. Miller*, 9th Dist. Summit No. 17711, 1997 Ohio App. LEXIS 8 (Jan. 2, 1997).

{¶73} In allocating the 2011 and 2012 tax liability, the trial court states that Michael Bauman, the parties' accountant, "testified during trial that filing separately [in 2011] would have resulted in zero tax liability for [Dawn] but $40,637 federal and $9,594 state liability for [David]."[10] Bauman testified at trial regarding the parties' projected

---

[10]Joint exhibit No. 30, entitled "2011 Tax Projection," includes figures for both 2010 and 2011. The $40,637 figure referenced by the trial court refers to the federal tax balance due in 2010 based on joint filing. The $9,594 figure appears to refer to the total state tax payments made in 2010.

2011 tax liability, and a projection of the parties' 2011 tax liability (based on whether the parties filed jointly or separately) was also admitted as a joint exhibit. Upon our review of the record, however, it appears that, in making this statement, the trial court was mistakenly looking at the parties' tax liability for 2010, not their projected tax liability for 2011. Based on Bauman's projections, the combined state and federal taxes the parties owed for 2011 totaled $105,028, if filing jointly, or $110,697 for David and a refund of $519 for Dawn, if filing separately. Given that (1) the $32,252.82 arrearage balance the trial court then believed existed is substantially less than a 50 percent share of the 2011 projected tax liability that the trial court stated it was allocating to Dawn, and (2) it appears that the trial court's allocation of the parties' 2011 and 2012 tax liabilities (and related zeroing of temporary support arrearages) was based on information regarding the parties' 2010 tax liability rather than the parties' 2011 projected tax liability (which was substantially greater than the parties' 2010 tax liability), we remand this matter to the trial court for reconsideration of its allocation of the parties' tax liabilities and to make any necessary adjustments to the division of property or equalization payment to account for any revised allocation of the parties' tax liabilities.

{¶74} Dawn's fifth assignment of error and David's third's cross-assignment of error lack merit and are overruled. David's fourth cross- assignment of error, to the extent it relates to the trial court's allocation of tax liabilities, is sustained in part and overruled in part.

**Calculation of David's Income for Support Purposes**

**{¶75}** In Dawn's sixth assignment of error and David's fifth cross-assignment of error, the parties challenge the trial court's calculation of David's income for purposes of determining the amount of spousal and child support to be awarded.

**{¶76}** Dawn's sixth assignment of error states:

VI. The trial court erred and abused its discretion when it incorrectly averaged Appellee's W-2 income, thereby lowering Appellee's income for support purposes.

**{¶77}** David's fifth cross-assignment of error states:

V. The trial court erred and abused its discretion by finding an improper

income for the parties and no deviation for support.

**{¶78}** The trial court calculated David's income for support purposes by taking the total of (1) the average of David's W-2 salary from 2007 to 2011 as reported on his tax returns and (2) the average of the net distributions David received from All-Sweep from 2007 to 2011 as reported in All-Sweep's financial statements (excepting a few unusual expenditures incurred in 2011). Dawn claims that because David's W-2 income increased every year from 2007 to 2011, it was an abuse of discretion for the trial court to average David's W-2 salary over several years rather than using his last year's salary (i.e., his salary in 2011) in calculating his income. Dawn claims that David's total income for purposes of calculating spousal and child support should have been $450,000 (the income figure referenced in the agreed August 22, 2011 temporary support order), or at the very least, $403,920 (the income figure calculated using David's 2011 salary), instead of the $373,000 income figure used by the trial court.

{¶79}   Courts have discretion, in calculating income for support purposes, to average income over a reasonable period of years in appropriate circumstances. *See, e.g., MacDonald v. MacDonald*, 8th Dist. Cuyahoga No. 96099, 2011-Ohio-5389, ¶ 31, citing R.C. 3119.05(H).   Based on its "analysis of many days of testimony and pages of financial records," the trial court determined that averaging David's income and distributions over five years was a "reliable method" to determine David's income.   The record reflects that there was variability in David's business and that whether David received income in the form of W-2 salary or distributions from the company was largely, if not entirely, discretionary with David.   Accordingly, under the circumstances, we find no abuse of discretion in the trial court's decision to average David's W-2 salary over five years in calculating his income for support purposes.   Dawn's sixth assignment of error is overruled.

{¶80}   David also contends that the trial court erred in using a value of $373,000 as his income for purposes of calculating spousal and child support, claiming that it amounts to an inequitable "double-dipping."   Relying on the Tenth District's decision in *Heller v. Heller*, 10th Dist. Franklin No. 07AP-871, 2008-Ohio-3296, David argues that because Dawn received a property distribution based on the valuation of his company that included the company's future profits and cash flows, she should not also receive spousal support based on an income figure that "includes income derived from David's ownership of All-Sweep," i.e., those same profits and cash flows.

**{¶81}**  The Tenth District explained this "double-dipping" concept in *Heller* as follows:

> "'[D]ouble-dipp[ing]' refers to the double counting of a marital asset, once in the property division and again in the [spousal support] award. More specifically, where a court uses a business owner's 'excess earnings' to value the interest in the business and also fixes support on that spouse's total income (inclusive of the 'excess earnings' used to value the business), a 'double-dip' occurs."  Vuotto, Double Trouble (2004), found at http://www.vuotto.com/new-jersey-divorce-articles/double-trouble.htm (last visited June 25, 2008). "[U]tilizing the same stream of income that forms the basis of valuing a business when calculating [spousal support] provides the non-owning spouse with the benefit from the same stream of income twice." *Id.*

*Heller* at ¶ 20.

**{¶82}**  In *Heller*, the husband owned a 39.5 percent interest in a company from which he received a $300,000 salary.  *Id.* at ¶ 2, 11.  As part of the property distribution in his divorce case, he was awarded his entire interest in the company, which was valued at $700,018, and the wife was awarded other marital assets totaling $350,000 in value. *Id.* at ¶ 10.  The husband was also ordered to pay his former wife $8,000 plus "20 percent of each payment of additional gross or, pre-tax income" he received as a bonus in the future.  *Id.* at ¶ 11.  The Tenth District held that awarding the wife a percentage of the husband's future bonus income as spousal support resulted in a "double-dipping" because it was based on the future earnings of the company, which the court had already considered when valuing the company as part of the property distribution.  *Id.* at ¶ 22-23.

**{¶83}** Other courts, applying this "double-dipping" concept, have similarly held that a trial court abuses its discretion when it uses an income figure, for purposes of

determining spousal support, based on future profits or earnings that were included as part of the valuation of the company in the property division. *See, e.g., Corwin*, 2013-Ohio-3996 at ¶ 48-55 (improper "double-dipping" occurred where valuation of husband's ownership interest in company and calculation of husband's income included the same $10,000 of unreported vending machine receipts; trial court abused its discretion in treating husband's share of company's expected future profits as both a marital asset subject to division and as income for spousal support purposes); *see also Chattree*, 2014-Ohio-489 at ¶ 75 ("Generally, a trial court may be found to have abused its discretion by allowing the payee spouse to 'double-dip' when a marital pension is divided as part of the property distribution and is subsequently included as income for purposes of establishing the support obligations of the payor spouse because the payee spouse receives a portion of that pension in two different forms."); *but see Bagnola v. Bagnola,* 5th Dist. Stark No. 2003-CA-00120, 2003-Ohio-5916, ¶ 66-68 (rejecting "double-dipping" argument as basis for overturning spousal support award where husband's earned income from three business ventures was both "inextricably tied to the valuation of each company" and is "necessarily a basis for determination of spousal support"); *cf. Kline v. Kline*, 8th Dist. Cuyahoga No. 96734, 2012-Ohio-479, ¶ 11 (observing that while husband's pension, distributed as part of the parties' marital assets, could not fund a spousal support obligation to former wife, the trial court could still properly "consider the income for the purposes of determining the appropriate amount of spousal support that can be satisfied through other sources of income or assets" and

concluding that "being required to satisfy spousal support through a previously divided marital asset is not synonymous with considering the income derived from the asset in determining the appropriate spousal support award").

**{¶84}** Instead of the $373,000 income figure used by the trial court, David maintains that the trial court should have used $130,000 as the value of his annual income for support purposes, based on the testimony of his expert that $130,000 would be reasonable "market-rate officer compensation" for David or others similarly employed. There was, however, no evidence that David ever received an annual salary of $130,000 from All-Sweep.

**{¶85}** R.C. 3105.18(C)(1)(a) mandates that the trial court consider the parties' income "from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under [R.C. 3105.171]" in determining whether an award of spousal support is "appropriate and reasonable" and, if so, in determining the "nature, amount, and * * * duration of spousal support." R.C. 3105.171(C)(3) requires that marital assets be divided "prior to making any award of spousal support * * * and without regard to any spousal support so awarded." R.C. 3105.18(A) provides that "'[s]pousal support' does not include any payment made to a spouse or former spouse * * * that is made as part of a division or distribution of property or a distributive award under [R.C. 3105.171]."

**{¶86}** Based on the unique circumstances in this case, we find that it would be inequitable not to consider both the amount of David's W-2 salary and the substantial

distributions he historically received from his company in determining an "appropriate and reasonable" spousal support award, notwithstanding any potential concerns regarding "double-dipping."  R.C. 3105.18(C)(1).

**{¶87}**    In this case, there was a significant disparity between David's W-2 salary and the distributions he received from the company.  The record reflects that whereas David's W-2 salary [11] for the years 2007-2011 ranged from $49,550 to $112,607 (averaging $81,503 a year), his net distributions from the company ranged from $242,602 to $499,464 during 2007-2011 (averaging, after deducting certain one-time expenses incurred in 2011, $291,313 annually).  It is undisputed that the distributions from the company were the primary means by which David supported the family during the marriage.  It was likewise undisputed that both the amount and manner in which David received "income" from his company, i.e., whether in the form of W-2 salary or distributions from the company, were largely, if not entirely, discretionary with David.  Accordingly, for these reasons, we find that the trial court did not abuse its discretion in using $373,000 as David's income in calculating support.

**{¶88}** Moreover, such "double-dipping" considerations do not apply when calculating child support.  The "broad definition" of "gross income" set forth in R.C. 3119.01(C)(7) "includes excess earnings from an interest in a business."  *Corwin*, 2013-Ohio-3996 at ¶ 55, fn. 5.  Further, children for whom child support is paid are "not

---

[11]These figures also include a nominal salary paid by the company to Dawn.    Because Dawn testified that she had not worked for the company during this time period, her "salary" is properly included in David's W-2 salary.

the distributee[s] of marital property consisting of a business valued pursuant to an income capitalization method and, therefore, the child[ren] receive[] no 'double-dip.'" *Id.* Accordingly, David's "double-dipping" argument has no application to the calculation of his income for purposes of determining his child support obligation. *See id.*

{¶89} David argues, in the alternative, that, "even if the *Heller* principles are not applied," the testimony of the parties' accountant, Michael Bauman, and related exhibits "illustrates that the $373,000 annual income figure * * * is an abuse of discretion." David maintains that, based on the evidence, the trial court should have listed David's income at $312,000 (based on the average of the parties' tax returns for 2007-2011) or $335,000 (David's total income for 2011 less the $135,000 he took out of All-Sweep to meet his obligations under the temporary support order, which was over the basis in the company). We disagree. As discussed above, the record reveals that, after careful consideration and "analysis of many days of testimony and pages of financial records," the trial court determined that $373,000 was a reasonable and "reliable" measure of David's income. David has not shown that the trial court's use of the $373,000 figure in calculating his spousal and child support obligations was unreasonable, arbitrary, or capricious.

**Imputation of Income to Dawn**

{¶90} David also claims that the trial court erred in refusing to impute income of at least minimum wage to Dawn in calculating the parties' child support obligations.

Pursuant to R.C. 3119.01(C)(5)(b) and(11)(a), "income" for purposes of calculating child support includes the potential income that may be imputed to a parent who is found to be voluntarily unemployed or underemployed. In determining if an individual is voluntarily unemployed, "'[t]he test is not only whether the [unemployment] was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned.'" *Hurley*, 2013-Ohio-5592 at ¶ 14, quoting *Woloch v. Foster*, 98 Ohio App.3d 806, 811, 649 N.E.2d 918 (2d Dist.1994). A parent claiming that the other parent is voluntarily underemployed has the burden of proof on that issue. *Hurley* at ¶ 14, citing *Fischer v. Fischer*, 2d Dist. Clark No. 11 CA 81, 2012-Ohio-2102, ¶ 24, and *King v. King*, 4th Dist. Jackson No. 12CA2, 2013-Ohio-3426, ¶ 21.

{¶91} In this case, the trial court did not find that Dawn was voluntarily unemployed. Although Dawn testified that she had not looked for work and presented no evidence of any physical or mental infirmities that would have prevented her from working full-time, she also testified that she had not worked since 1996, still had substantial child care responsibilities for the parties' four minor children, had few marketable skills, would need to obtain additional education and training in order to become self-supporting, and had enrolled at Lakeland Community College with the intention of pursuing a nursing degree. No evidence was presented regarding any job opportunities in the area for which Dawn would qualify. Under the circumstances, we do

not find that the trial court abused its discretion in failing to impute additional income to Dawn in calculating the parties' child support obligation.

**Child Support Award**

**{¶92}** Finally, David argues that the trial court abused its discretion in ordering him to pay $2,000 a month in child support, claiming that "extraordinary circumstances," including the liberal parenting time he received under the parties' agreed shared parenting plan, the greater amount of liquid assets at Dawn's disposal following the distribution of marital property, and the "significant tax liability" David would have to pay under the final judgment entry of divorce, warranted a "downward deviation" of his child support obligation pursuant to R.C. 3119.04(B) and 3119.24.

**{¶93}** A trial court has broad discretion to calculate child support. Absent an abuse of discretion, an appellate court will not disturb a child support order. *Wright*, 2009-Ohio-128 at ¶ 13, citing *Booth,* 44 Ohio St.3d 142 at 144, 541 N.E.2d 1028.

**{¶94}** In general, the amount of child support calculated using the child support guidelines and child support computation worksheet is "rebuttably presumed to be the correct amount of child support, although the trial court may deviate from that amount." *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 49, citing R.C. 3119.03 and *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), paragraph one of the syllabus. However, when the parents' combined income exceeds $150,000, as it does in this case, R.C. 3119.04(B) controls the determination of the parents' child support obligation. Under R.C. 3119.04(B), the amount of child support to be awarded is to be

determined by the trial court on a case-by-case basis and is left "'entirely to the court's discretion.'" *Brownlee v. Brownlee*, 8th Dist. Cuyahoga Nos. 97037 and 97105, 2012-Ohio-1539, ¶ 26, quoting *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 54. The trial court is not required to make any specific findings or to provide any explanation for its child support award unless it awards less than the amount calculated for combined incomes of $150,000. *Brownlee* at ¶ 26; *Cyr* at ¶ 56.

{¶95} Based on the child support computation worksheet, the trial court calculated David's share of the parties' annual child support obligation for their four minor children to be $13,987 when private health insurance is provided and $15,429 when private health insurance is not provided. Determining that "the actual annual obligation would be unjust and inappropriate and would not be in the best interest of the minor children for the reasons stated herein," the trial court increased David's annual child support obligation to $24,000 (or $500 per child per month), plus a 2 percent processing fee. Upon our review of the record, we cannot say that the trial court's child support award was arbitrary, capricious, or unreasonable. Accordingly, we find no abuse of discretion by the trial court in determining David's child support obligation.

{¶96} David's fifth cross-assignment of error is overruled.

**Attorney Fees**

{¶97} In Dawn's ninth assignment of error and David's tenth cross-assignment of error, each party challenges the trial court's award of $35,000 in additional attorney fees to Dawn. Dawn argues that the additional attorney fee award was "insufficient" and

"inequitable" under the circumstances and that she should have been awarded $70,000 in attorney fees.[12] David claims that the evidence at trial established that Dawn had the ability "to pay for her own attorney fees" and that she, therefore, did not "'need' assistance for attorney fees." He claims that the trial court's order requiring him to pay an additional $35,000 towards Dawn's attorney fees on top of the $20,000 in interim attorney fees he already paid was "error, an abuse of discretion[,] and contrary to R.C. 3105.73." Both arguments are meritless.

{¶98} Dawn's ninth assignment of error states:

IX. The trial court erred and abused its discretion in its award of attorney fees which was insufficient and inequitable when considering all the elements of the statute and the evidence.

{¶99} David's tenth cross-assignment of error states:

X. The trial court erred and abused its discretion by ordering appellee/cross-appellant to pay $35,000.00 toward appellee's attorney fees as said decision was against the manifest weight of the evidence and is an inequitable decision.

{¶100} There are "no automatic attorney fees" in domestic relations cases. *Packard v. Mayer-Packard,* 8th Dist. Cuyahoga No. 85189, 2005-Ohio-4392, ¶ 8. However, pursuant to R.C. 3105.73(A), a trial court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award

___

[12]Based on the billing statement she submitted, the trial court noted that Dawn's "total fees and expenses are $113,148."

equitable." In determining whether an award of attorney fees is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). Whether to award attorney fees under R.C. 3105.73(A) is within the sound discretion of the trial court. *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, ¶ 33, citing *Rand v. Rand*, 18 Ohio St.3d 356, 359, 481 N.E.2d 609 (1985). We find no abuse of discretion in the trial court's decision to award Dawn an additional $35,000 (and no more) toward her attorney fees.

**{¶101}** In considering an award of additional attorney fees, the trial court identified several factors under R.C. 3105.73 and Loc.R. 21(B) of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division that it deemed relevant to its determination of whether an additional award of attorney fees to Dawn was equitable and appropriate. These factors included: the disparity in the parties' income, the difficulty in ascertaining or valuing the parties' assets, the length of the trial, and the amount of the interim fees and expenses previously awarded to Dawn. The trial court further explained its attorney fee award as follows:

> In determining the amount of reasonable attorney fees for this case, consideration was given to whether all the legal services rendered were necessary and whether under the facts of this case the amount of time expended on such service was fully compensable. The Court concludes that after the division of the marital property and the award of spousal support, [Dawn] will not have the financial ability to pay all of her own attorney fees and Plaintiff will have the ability to contribute to these fees. Based on the foregoing, an award of attorney fees to [Dawn] in the amount of $35,000 is reasonable.

{¶102} Based on a careful review of the record, we find no abuse of discretion in the trial court's attorney fee award. Dawn's ninth assignment of error and David's tenth cross-assignment of error are without merit and are overruled.

**Duration of Spousal Support**

{¶103} In her tenth and final assignment of error, Dawn argues that the trial court abused its discretion by (1) limiting the duration of her spousal support award to 46 months and (2) retaining jurisdiction over the spousal support award.

{¶104} Dawn's tenth assignment of error states:

X.   The trial court erred and abused its discretion and was arbitrary in awarding the wife only three years of future spousal support when the wife has no meaningful way of supporting herself and her five children.

{¶105} At trial, Dawn requested spousal support of $15,000 a month for a period of 68 months (five years and eight months). The trial court awarded Dawn monthly spousal support of $12,500 for the 68 months she requested, but then credited David for the 22 months he already had paid temporary spousal support while the case was pending, leaving 46 months of future spousal support commencing July 1, 2013. The trial court reserved jurisdiction over the spousal support award in the event that David's income changed.

{¶106} Dawn claims that David should not be given credit for the time he paid temporary support and instead should be ordered to pay spousal support for 68 months

beginning July 1, 2013. She also contends that the spousal support should be "non-modifiable" during the term of support.

**{¶107}** In determining (1) whether to grant spousal support and (2) if so, the amount and duration of spousal support payments, the trial court must consider the factors listed in R.C. 3105.18. *Robinson v. Robinson*, 8th Dist. Cuyahoga No. 97933, 2012-Ohio-5414, ¶ 22, citing *Deacon,* 2009-Ohio-2491. These factors include each party's income, earning capacity, age, retirement benefits, education, assets and liabilities, and physical, mental, and emotional condition; the duration of the marriage; the parties' standard of living; a party's inability to seek employment outside the home; the parties' contributions during the marriage; tax consequences; and lost income due to a party's fulfillment of marital responsibilities. R.C. 3105.18(C)(1)(a)-(m). In addition, the trial court is free to consider any other factor that the court finds to be "relevant and equitable." R.C. 3105.18(C)(1)(n).

**{¶108}** The trial court is not required to comment on each and every statutory factor; the record need only show that the court considered the statutory factors when making its award. *Neumann v. Neumann*, 8th Dist. Cuyahoga No. 96915, 2012-Ohio-591, ¶ 17, citing *Carman v. Carman*, 109 Ohio App.3d 698, 703, 672 N.E.2d 1093 (12th Dist.1996). If the record reflects that the trial court considered the relevant statutory factors, and if the judgment contains sufficient detail for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the award. *Chattree*, 2014-Ohio-489 at ¶ 71, citing *Daniels*

*v. Daniels*, 10th Dist. Franklin No. 07AP-709, 2008 Ohio App. LEXIS 772, *9 (Mar. 4, 2008).

{¶109}  Dawn argues that the trial court's decision "does not reflect that the Court engaged in any analysis as to whether or not [46 months] was a sufficient and reasonable time period for [her] to become self supporting."  She claims that 3 ½ years of spousal support is "inadequate" and "arbitrary" because it does not take into account what is necessary for her to successfully re-enter the work force, while at the same time supporting herself, maintaining her household, and raising the parties' children.  The record reveals otherwise.

{¶110}  In this case, the trial court separately addressed each of the relevant R.C. 3105.18 factors at length in its judgment entry.  Based on the statutory factors, in particular, the duration of the marriage, the need for Dawn to return to school to become gainfully employed, and Dawn's continuing parental responsibilities for her four minor children, the trial court concluded that monthly spousal support in the amount of $12,500 was "appropriate and reasonable" and that 68 months was "an equitable and reasonable period of spousal support" given the circumstances.   However, because David had already been paying most of Dawn's household expenses, plus full spousal and child support since August 2011, the trial court determined that David should be given credit for the 22 months for which he had already paid spousal support while the case was pending, leaving a remaining period of 46 months of spousal support.

{¶111} The record reveals that the trial court conducted a thorough analysis of the relevant statutory factors in determining both the amount and duration of Dawn's spousal support award. The trial court's findings are supported by competent, credible evidence in the record. Accordingly, we find no abuse of discretion in trial court's award of spousal support.

{¶112} We likewise find no abuse of discretion in the trial court's decision to retain jurisdiction over the spousal support award in the event David's income changes. "The decision to retain jurisdiction to modify an award of spousal support is left to the sound discretion of the trial court." *Deacon*, 2009-Ohio-2491 at ¶ 63, citing *Johnson v. Johnson,* 88 Ohio App.3d 329, 623 N.E.2d 1294 (5th Dist.1993). It was undisputed that David's business is cyclical and weather dependent. The court reasonably elected to maintain jurisdiction over the amount of spousal support in case the parties' circumstances change.

{¶113} Dawn's tenth assignment of error is overruled.

**Admissibility of Testimony from Dawn's Valuation Expert**

{¶114} In his eleventh and final cross-assignment of error, David argues that the trial court abused its discretion in permitting Dawn's valuation expert, Lastovka, to testify regarding the valuation of All-Sweep.

{¶115} David's eleventh cross-assignment of error states:

XI. The trial court erred and abused its discretion by denying appellee/cross-appellant's motion in limine and allowing appellant/cross-appellee's expert to testify and submit a report into evidence.

{¶116} Because the trial court accepted Cuini's valuation of All-Sweep, rather than Lastovka's valuation of All-Sweep, any claimed error in the admissibility of Lastovka's testimony is moot. David's eleventh cross-assignment of error is overruled.

{¶117} We affirm the trial court's judgment in part, reverse it in part, and remand the case to the trial court (1) for adjustment of the support arrearages to correct the improper crediting of $13,224.63 in expenditures by David against the support arrearages, (2) for adjustment of the property division to reflect the classification of the parties' post-filing credit card debt as separate debt, (3) for reconsideration of the allocation of the parties' tax liabilities, and (4) to make any other necessary adjustments to the division of property, equalization payment, or award of support arrearages to account for any revised allocation of the parties' tax liabilities.

{¶118} Judgment affirmed in part, reversed in part, and remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

LARRY A. JONES, SR., P.J., and
PATRICIA ANN BLACKMON, J., CONCUR